PENNSYLVANIA STEEL CO. et al. v. NEW YORK CITY RY. CO. et al.
(and three other causes).

(District Court, S. D. New York. December 9, 1915.)

Nos. 2-149, 2-33, 3-27, 3-37.

1. CORPORATIONS ⬤═566—RECEIVERS—DISTRIBUTION OF ASSETS—RIGHT TO PREFERENCE.

In determining the right of contract creditors for supplies, etc., to preference from the estate of an insolvent railroad company, special circumstances may justify the allowance of preference to claims accruing prior to the arbitrary period generally settled upon.

[For other cases, see Corporations, Cent. Dig. §§ 2283-2286; Dec. Dig. ⬤═566.]

2. CORPORATIONS ⬤═566—RECEIVERS—DISTRIBUTION OF ASSETS—RIGHT TO PREFERENCE.

Where a lessee of a street railroad system succeeded the lessor in its operation, the operating officers and employés being largely the same, the fact that an order for operating supplies received and used by the lessee was written on a blank form of the lessor is not sufficient to defeat the right of the person furnishing the supplies to a preference on distribution of the estate of the lessee in insolvency.

[For other cases, see Corporations, Cent. Dig. §§ 2283-2286; Dec. Dig. ⬤═566.]

3. CORPORATIONS ⬤═566—RECEIVERS—DISTRIBUTION OF ASSETS—RIGHT TO PREFERENCE.

Claims for supplies furnished to a street railroad company *held* properly allowed preference from its estate in insolvency, if (a) the material ordered is shown by the requisition, and by its quantity and nature, and by the department of the company for which it was intended, to be of an operation character, and was charged to operation; or (b) if it is of an operation character, or delivered to the engineer of maintenance of way or other operating head, and was not charged to construction stores; or (c) where, although charged to construction stores, it was in quantity and character adapted to purposes of operation, and actually used for such purposes. Various claims also considered as to whether or not they came within either of such classes.

[For other cases, see Corporations, Cent. Dig. §§ 2283-2286; Dec. Dig. ⬤═566.]

In Equity. Suit by the Pennsylvania Steel Company and another against the New York City Railway Company and another, with three other causes. In the matter of claims for preference by certain contract creditors.

By decisions of this court (208 Fed. 168) and of the Circuit Court of Appeals (216 Fed. 471, 132 C. C. A. 518) it was determined that

certain type claims were to be paid in full, with interest at 6 per cent. from the average due date of each claim. These type claims generally covered supplies necessary for the daily maintenance of a railroad as a going concern. The Circuit Court of Appeals indicated the test by which the character of such supply claims was to be determined as follows:

"They must be of such a quantity and to be paid for at such times as to indicate that they are necessary for current operations and are to be met out of current earnings. Direct evidence as to the latter condition is not necessary. The court may draw the inference that this was the expectation of the parties from the circumstances attending the transaction."

In the light of these decisions more than 200 separate claims were taken up for investigation by the special master. Evidence was taken, and all the claims separately disposed of, such disposition being included in a single report, accompanied by an opinion (a copy of which will be reported as a note at the end of this opinion). Exceptions to parts of this report were duly filed, and the cause has come on for argument upon these exceptions.

Masten & Nichols, of New York City, for receiver of Met. St. R. Co.

Dexter, Osborne & Fleming, of New York City, for receivers of New York City R. Co.

Richard Reed Rogers and James L. Quackenbush, both of New York City, for New York City R. Co.

Byrne & Cutcheon, of New York City, for Pennsylvania Steel Co. and Degnon Contracting Co.

Benj. S. Cutching, of New York City, for tort creditors.

LACOMBE, Circuit Judge (after stating the facts as above). The hearing on these exceptions was had some time ago, the discussion was a long one, and many separate points were involved. Briefs were promptly filed, but the matter was not at once taken up because the court, mistakenly as it turns out, supposed that the contemplated adjustment of the entire proceeding would eliminate some of the controversies here presented. It is now understood that, whether such adjustment be or be not carried out, it is desirable that the findings of the special master as to these various claims be approved or disapproved by the District Court. The situation, however, apparently calls for no extended discussion of the law. A brief indication of the decision as to each group and the reason for it will be sufficient. We are more particularly concerned now with the disposition of this long drawn out proceeding than with the making of precedents for the disposition of future proceedings.

The various claims may be distributed into groups, according to the questions of law or practice presented. They will be treated here first by groups; thereafter individual claims which do not thus classify may be disposed of.

[1] First. The special master disallowed no claim, otherwise allowable, because of the time it accrued. No claim is asserted which accrued earlier than nine months prior to receivership. Exception has been taken to his allowance of any claims which accrued more than six months prior to receivership.

This brings up an interesting question of federal practice upon which there have been many opinions reported, by no means harmoni-

ous in their reasoning or conclusions. One proposition, however, is settled by repeated decisions of the United States Supreme Court, viz.: That special circumstances will justify the allowance of claims accruing earlier than the arbitrary period generally settled upon. Such special circumstance may well be held to exist in reference to the claims now under advisement, in the fact that in one of the type claims an item accruing before the six months period was allowed by the special master and by this court, certainly after argument upon the very point now raised. That item was a very small one, and may have escaped the attention of the Circuit Court of Appeals, which made no reference to it, nor to this question of time. It may be that, in the absence of an expression of its opinion, the decision is not citable as an authority on the point one way or the other; but it would seem that a uniform rule should be applied here to all claimants against this estate. Moreover, the amount of claims accruing prior to the six months is relatively small. The exceptions to the allowance of such claims, for reason stated, are therefore overruled.

[2] Second. The special master allowed certain claims against the City Company, where the blanks upon which orders for the supplies were given were forms of the Metropolitan Company. Exception was reserved to this ruling on the ground that it cannot be held that claimant relied on a preference against the City Company, when he knew, or had good reason to believe, that he was furnishing the supplies to the Metropolitan Company.

Legally these were two separate corporations; and this court and the Circuit Court of Appeals have repeatedly held that they are to be considered and treated as such in the accountings of these two estates. Nevertheless there are special circumstances to be considered. Undoubtedly it was generally understood in the community that the relations of the two companies were very close, that one had practically succeeded the other; of their mutual relations sellers knew or cared very little; what they sold they sold to the "system," which comprised both roads. There was the same purchasing agent for both roads; whether he used an old blank or a new one was not a matter the seller would be likely to give much thought to, so long as what the latter sold was of the nature and delivered in quantities to indicate it was needed for running the system. In some of these cases orders on "Metropolitan blanks" were given for supplies delivered in conformity with a written contract with the City Company; in others, a verbal order was given, and after it was filled a written order prepared as basis for a voucher. The exceptions to the master's decision on this point are overruled.

[3] Third. The special master allowed claims, whether on Metropolitan or on City blanks, as preferential (a) if the material ordered is shown by the requisition, and by its quantity and nature, and by the department of the railway company for which it was intended, to be of an operation character, and was charged by the City Company to operation; (b) if the material ordered is of an operation character, and was placed in general stores, or delivered to the engineer of maintenance of way or other operating head, and was not charged

to construction stores; (c) where, though charged to construction stores, it was in quantity and character adapted to purposes of operation, and actually used for such purposes.

I concur in these rules of disposition of the claims, and all exceptions to their application are overruled.

Fourth. In the Hugh Thomas proceeding it was held that there was a trust fund available to pay for certain supplies. Persons whose claims are presented here and now asked in that proceeding to have their claim decreed to be payable out of such trust fund. To a determination of that request it was not important to go into the question of intent of the seller at the time of sale. If his supplies were used for the purposes of the trust, the trust fund would pay for them. So much of these claims as were finally allowed against the trust fund are forever disposed of; the trust fund is abundantly solvent, and they have been or will be paid. To the extent, however, to which these claims were not allowed against the trust fund, the court differing from the special master as to some of his allowances, they are open to be disposed of as claims for operation supplies; if the evidence shows them to be such, they should be allowed preference here.

From the brief submitted by the Loraine Steel Company, which may be taken as an illustration of others, the special master in the apportionment proceeding allowed items aggregating $77,940.61 as a charge against the trust fund. The same items being presented in this proceeding, he disallowed them, on the ground that they had been allowed in the former proceeding. But when the report in the former proceeding came before the court items amounting to $47,044.57 were disallowed. These items should be passed upon in this proceeding in accordance with the rules above indicated. Quite probably this can be done by agreement of counsel upon settlement of the decretal order; if not, the special master can make a supplemental report on these items, and on any others where a similar complication exists.

Fifth. Items of supplies for repair and upkeep of the Cable Building and the Lexington Avenue Building.

These were large buildings, in part occupied by the corporation, but largely rented for offices and other commercial purposes. All these claims were apparently allowed. As to so much of them as covered supplies for the maintenance of the offices of the company in these buildings there can be no doubt about the propriety of their allowance. Supplies specifically for the convenience of tenants of portions of these buildings might be considered as standing on a different footing. In some instances, such as the claim of Otis Elevator Company, the claim should be allowed without pro rata, although it benefited the tenants. The offices of the company on the upper floors could not have been conveniently used without elevator service. The amounts involved are too small to call for any microscopic examination of the items. Exceptions to these findings of the master are overruled.

Sixth. Claims for liabilities incurred for the purpose of preserving or increasing fire protection; also claims for liabilities incurred in the restoration of property destroyed by fire.

Premiums paid for insurance of property devoted to the operation

of the system would seem to be a legitimate expense of operation. Commissions may be considered in the same class as premiums. Expenses incurred in making structural changes in the property, such as the substitution of concrete for wood in parts of a building, are not to be classified as operation expenses. Nor will such classification include supplies which the evidence shows were furnished for the restoration of property destroyed or damaged by fire. Tools, machines, and materials subject to destruction by use, and required for continuance of operation, are properly included in the special master's allowance. Exceptions are sustained or overruled as may be necessary to accomplish this result.

Seventh. The special master classified as preferred claims for material furnished to the department of the railroad company having charge of the defense of accident claims. I am inclined to differ from him on that point, but the amounts are small, and there is a plausible argument to support the classification; therefore his rulings on that branch of the case will not be disturbed. Exceptions thereto are overruled.

Eighth and Ninth. The special master's allowance of preference in the case of claims for materials furnished to the controlled companies, and his disallowance of claims for damages for breach of long-term executory contracts, are approved. Exceptions are overruled.

Tenth. As to the allowance of interest: The situation here seems more complicated than it really is by reason of the accidental circumstance that discussion and adjudication in reference to the trust came up earlier in time than did the questions now presented. If we consider the whole matter in logical sequence, all complications disappear. A person furnishes supplies to the railroad company; it goes into the hands of a receiver, and he files a claim for reimbursement out of its estate. He first proves sale and delivery of the supplies, and his claim is allowed against the estate for a specified amount. As to all, or as to some part, of his claim he thinks he can show himself entitled to a preference. He proves that the supplies were of such a character and were furnished under such circumstances as to give the preference, recognized by the law, for debts contracted for current operation supplies. In this proceeding that preference has been found to exist in the case of many of the claimants. It then appears that there is in existence a trust fund out of which payment will be made for all supplies actually used for a specific purpose. Some persons prove that they sold supplies with the express intention on the part of seller and purchaser that such supplies should be used for that specific purpose; also that they were so used. It is, of course, ordered that they be paid out of the trust fund. Other persons appear, who have proved that they sold supplies suitable for operation, with the understanding that they would be used for operation. They further prove that, contrary to such understanding, the supplies were actually used for the specific purpose contemplated by the trust. It is therefore ordered that they be paid for from the trust fund. If the amounts proved in both proceedings were alike, the claim would be paid out of the specific fund, if it were sufficient to pay all claims upon it, as it is. But the

amounts are not alike; a claim, when proved as a preferential one, is held entitled to a larger rate of interest (or increment) for a longer period than the same claim is held entitled to when proved against the trust fund.

Had the logical sequence been the chronological one, this is what would have happened: A.'s claim would have been proved as a preferential one for $2,600; it would then have been proved as a claim against the trust fund for $2,200. A. would have been required to take his pay first from the specific trust fund, so far as it would go; the balance (in that assumed case, $400) he would then collect, as a preferred claim, from the general estate. As I understand it, this is substantially what the special master's findings as to interest results in, and upon that understanding the exceptions to those findings are overruled.

The findings of the special master as to general office supplies, etc., also as to the claims of the Brill Company and Sjoberge Company, separately briefed, are approved.

Any matters omitted may be brought up on settlement of the decree.

NOTE.—The following is the opinion of the special master, referred to in the opinion:

This memorandum indicates briefly rulings on general contentions suggested by disputed claims for preference, concerning which oral and written arguments have just been had. It is understood that they will determine the disposition of those of the claims for preference in assets of the City Estate upon which counsel have not been able to agree.

1. To the extent that claims, asserted both in the apportionment proceeding and in this proceeding, have been allowed in the former proceeding, such claims will be disallowed in this proceeding.

2. Where materials and supplies were furnished under circumstances and in quantities which justified the creditor in assuming that they were intended for purposes of operation, his status as a supply creditor was fixed at the time the receivers were appointed, and the fact that either before or after the receivership the materials and supplies were used for construction or were on hand on that date does not deprive him of such status.

3. A supply creditor, within the foregoing definition, whose claim has been wholly or partly allowed in the apportionment proceeding, is entitled to the difference between Trust Company accumulations received by him on the amount so allowed by the report in that proceeding, and the 6 per cent. interest allowed on the claims of the supply creditors in the Preference Matter. 132 C. C. A. 518, 216 Fed. 471. Claims for materials and supplies purchased for construction to the knowledge of the creditor, e. g., the gravel sold by the Hugh Thomas Company for use in the electrification of First Avenue, do not come within this ruling.

4. No claim for preference herein asserted, and otherwise entitled to allowance as such, is disallowed because of the time when it accrued. None is asserted which accrued earlier than nine months prior to the receivership, and the decision is that such a claim is not excluded solely for that reason. Same citation.

5. Claims for materials furnished to controlled companies are preferred under the ruling in the same case.

6. Claims for preference of amounts allowed for cost of repaving done, not at the instance of the authorities, but solely for purposes of repair necessitated by and necessary to operation, are allowed.

7. Preference of claims for material furnished to the department of the Railroad Company having charge of the defense of accident claims is allowed. Because accident claims which increase its difficulties have been held to be

not essential to operation (s. c. 216 Fed. at 471, 132 C. C. A. 518), it does not follow that obligations incurred in resisting them are not.

8. Claims for preference of amounts heretofore allowed for the repair and upkeep of the Cable Building and the Lexington Avenue Building are allowed. Both these buildings were acquired for and actually used in connection with operation, and in one, if not both, space was devoted to company offices in connection with administration. The fact that in either or both additional space had been rented for purposes not connected with operation should not, on the record here, deprive a creditor of his status as a supply creditor, and that, as it seems to me, without further specification, is the basis of the objection of Metropolitan interests to the allowance.

9. Preference of claims incurred for purposes of preserving or increasing fire protection is allowed. The City Company would have been compelled to incur such expenditures if it had owed no obligation whatever to lessors or mortgagees to effect insurance, unless it chose itself to assume the risk of the destruction of equipment and operating plant and a partial or complete cessation of operation. Such a risk the most solvent of operating companies would hardly care to assume, and it therefore seems to me that such expenditures were in a very real sense essential to operation. At all events, it must be remembered that there is absent in this case an element which in all the cases cited in opposition to preferences urged here was present there, viz., the necessity of displacing vested liens. Except in a very remote sense, if at all, neither the trustee of the Metropolitan mortgage nor the Railways Company, as assignee of the purchaser at foreclosure, can urge this very strong equity against the allowance of preferences in these unmortgaged assets constituting the City Company's estate, and this consideration may well be controlling where border line claims for preference are suggested.

10. Claims based upon Metropolitan blanks, which were disallowed in the apportionment proceeding are entitled to a preference (a) if the material ordered is shown by the requisition, and by its quantity and nature and by the department of the Railway Company for which it was intended, to be of an operation character and is charged by the City Company to operation; (b) if the material ordered is of an operation character, and was placed in general stores, or delivered to the engineer of maintenance of way or other operating head, and was not charged to construction stores; (c) where, though charged to construction stores, it was in quantity and character adapted to purposes of operation, and actually used for such purposes, facts which I have held in the Apportionment Matter deprive it of rank as a construction claim. In determining to recommend claims coming within any of these categories as preferred I am applying the law as stated by the court in this proceeding, and inferentially, if not expressly, affirmed on appeal, that "if, as matter of public policy, claims of this character are accorded special equity, they should have it, whether the vendor at the time of sale did or did not know that he was entitled to it." 208 Fed. 183; 132 C. C. A. 518, 216 Fed. 471.

11. No claims, whether originating on Metropolitan blanks or otherwise, which have not heretofore been allowed against the City estate, can be considered in this proceeding. A few of the claims have been briefed, and can be conveniently disposed of now in accordance with the foregoing rulings.

The items of the Eggleston claim allowed in the Apportionment Proceeding are disallowed, without prejudice to an allowance here of the difference in interest on such of the items as were not to the direct knowledge of the creditor purchased for construction, but on the facts disclosed by the record were entitled to rank as supply claims. The balance of $1,122.68 not allowed there is allowed here.

The claim of the Degnon Contracting Company is allowed at $11,173.22.

The claim of the Pennsylvania Steel Company for $30 is allowed here; the balance of $36,861 allowed in the Apportionment Matter being disallowed, with the qualification above indicated as to allowance for difference in interest on items not construction items in origin.

The claim of the Brill Company, having been allowed in the Apportionment Proceeding, is disallowed. This claim as to car bodies and items 2, 3, 4, and 6 is clearly a construction claim, and on these items no difference in interest

is allowable. Item 5, being the price of the balance of 50 sets of inside brakes, suggests a dispute in this connection which can be decided on the settlement of the report, if counsel do not agree.

The claim of the Vulcanite Portland Cement Company is allowed, except to the extent that it is allowed in the Apportionment Proceeding. A similar disposition is made as to any question of interest on this latter amount.

Claims to preference of Hyman & McCall, of the Otis Elevator Company, of the General Electric Company, and of the John Simmons Company are allowed.

Counsel for the contract creditors' committee may file with me a proposed report accordingly not later than May 20, 1915, and a date will be fixed thereafter for a hearing, at which amendments and objections will be passed on.